**UNITED STATES of America**

v.

**Maria RAMOS, A/k/a "Donita", and Elizabeth Ramos, a/k/a "Lisi".**

**Civil Action Nos. 95–2991, 95–2995. Criminal Action Nos. 90–00431–40, 90–00431–41.**

United States District Court, E.D. Pennsylvania.

July 16, 1997.

Kenneth Trujillo, Philadelphia, PA, for petitioner Maria Ramos.

Thomas A. Bergstrom, Philadelphia, PA, for petitioner Elizabeth Ramos.

Robert A. Zauzmer, Kristin Hayes, Philadelphia, PA, for respondent U.S.

## MEMORANDUM

DuBOIS, District Judge.

Maria Ramos and Elizabeth Ramos each petition this Court, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct their sentences. Maria and Elizabeth Ramos were tried together and both convicted of drug related crimes. In separate Petitions filed May 17, 1995, each raised numerous claims. At a hearing on March 14, 1997, each knowingly, voluntarily and intelligently waived all but two claims on advice of counsel after an extensive colloquy. In the first of the two remaining claims they each argue that their separate trial counsel were ineffective for failing to object to the admission of, or, in the alternative, failing to request a limiting instruction regarding testimony concerning the extremely violent behavior of several co-conspirators. Secondly, petitioners object to the Government's failure to file a motion to reduce their sentences under Federal Rule of Criminal Procedure 35(b). Because the Court finds that trial counsel were not constitutionally ineffective in their representation of petitioners, and because the Government did not act inappropriately in electing not to file a motion under Rule 35, the Court will deny the Petitions.

## I. Background

Petitioner Maria Ramos, her daughter, petitioner Elizabeth Ramos, and Maria Ramos' three sons, Richard, Jerry and Edwin Ramos, were leaders of the Ramos Cocaine Organization ("RCO") which, through the employment of over one hundred workers, distributed massive amounts of cocaine and crack cocaine in the Spring Garden area of Philadelphia, Pennsylvania between 1985 and September of 1990. At its peak in the Summer of 1989 the RCO had organized around the clock sales of cocaine and crack cocaine in three daily eight-hour shifts and sold over $15,000 of cocaine and $20,000 of crack cocaine each day. Indictment at ¶ 29.

Petitioners and thirty-nine (39) other persons were charged with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 and other drug related crimes.[1] Excepting petitioners (and one person against whom charges were dismissed) each defendant plead guilty. After a joint trial Maria and Elizabeth Ramos were convicted of conspiracy to distribute cocaine and cocaine base. Maria Ramos was also convicted of distribution of cocaine and possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). On February 25, 1993 Maria Ramos was sentenced to life imprisonment. Elizabeth Ramos was sentenced on February 25, 1993 to 324 months in prison.[2]

## II. Petitioners' Claims Regarding Violent Testimony

### A. Factual Background

Petitioners contend that their trial counsel were ineffective for failing to object to the

1. Thirty Nine persons were charged in the Indictment filed on September 18, 1990. Maria and Elizabeth Ramos (and three of the original defendants) were charged in the Superseding Indictment filed on May 28, 1991.

2. Because the petitions were filed on May 17, 1995, before the Anti–Terrorism and Effective

Death Penalty Act ("AEDPA") became effective on April 24, 1996, the Court need not address the applicability of the AEDPA's one-year statute of limitations to the petitions. *See Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) (holding that amendments to Chapter 153 of AEDPA are not retroactive).

admission of testimony regarding violent activities and, after the testimony was received in evidence, for failing to request a limiting instruction. The testimony at issue concerns three episodes of violent conduct undertaken by several RCO co-conspirators; Maria Ramos was not involved in two of those incidents and Elizabeth Ramos did not partake in any of the three occurrences.

Petitioners first object to the testimony of three cooperating government witnesses regarding the attack on a man known as "Capone" on or about March 16, 1990. David Serrano, Daniel Serrano and Jesse Ramos, Maria Ramos' nephew, all members of the RCO and indicted co-conspirators, described how the Serrano brothers and Jerry Ramos wrapped Capone's hands, feet and head in duct tape "like a mummy" and beat him. Jesse Ramos, Feb. 5, 1992, Tr. at 206–08; *see also* David Serrano, Jan. 31, 1992, Tr. at 149–51; Daniel Serrano, Feb. 3, 1992, Tr. at 120–21. The beating was so brutal that Jesse Ramos said he could not watch, and turned away in shock. Feb. 5, 1992, Tr. at 206–208. David Serrano described how he used pliers to extract Capone's teeth; the three then referred to Capone as "Gumby."[3] Jan. 31, 1992, Tr. at 149–51. Maria and Elizabeth Ramos did not participate in this attack.

Secondly, petitioners object to the admission of testimony by Virginia Navarro concerning violence. Virginia Navarro described a beating of her husband late in the evening of July 7, 1989 by 16 people. Feb. 5, 1992, Tr. at 15–16. Navarro's husband was hit with baseball bats resulting in bleeding "everywhere throughout his head because they broke his head three times." *Id.* Petitioners did not participate in this episode.

Lastly, petitioners object to testimony of David Velasquez and Marco Villafane, both indicted co-conspirators and cooperating government witnesses, about the beating of Anthony Velasquez by Maria and Richard Ramos and others in a hotel on or about September 25, 1988. David Velasquez explained that Anthony, his brother, was beaten because Richard Ramos suspected that Anthony had stolen drugs from the RCO. Feb. 7, 1992, Tr. at 50–51. David Velasquez described that Anthony had a swollen face and his fingernails were "pulled out." *Id.* at 51. Additionally, David Velasquez related that his brother reported that Maria Ramos had kicked him in the face. *Id.* at 52. Marco Villafane completed the story, explaining that shortly after the beating of Anthony, he heard a rumor that Anthony was killed. *Id.* at 105.

## B. Legal Analysis

■ Federal prisoners may properly raise allegations of ineffectiveness of counsel in a § 2255 petition. *See United States v. DeRewal,* 10 F.3d 100, 103–04 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994) (finding that a § 2255 petitioner is not held to the cause and prejudice standard of *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), if the ineffective assistance claim is raised in the first instance in a § 2255 motion). Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a petitioner alleging ineffectiveness of counsel must make a twofold showing in order to demonstrate a violation of the Sixth Amendment right to counsel warranting reversal of a conviction and a new trial. First, a petitioner must establish that counsel's performance was so deficient that it falls below "an objective standard of reasonableness." *See id.* at 688, 104 S.Ct. at 2064. Second, a petitioner must demonstrate that counsel's "deficient performance prejudiced the defense;" that is, there is a reasonable probability that the result would have been different but for the deficient performance. *Id.* at 687, 104 S.Ct. at 2064.

---

**3.** David Serrano's testimony about removing Capone's teeth with pliers was particularly detailed:

I got them in his mouth, and then when I got them in his mouth, I started pressing on the grip of the pliers real hard because it was like on his teeth. Then when I pressed real hard, like grips, they snapped. It was like, this teeth, like this, psssh, they blew up. You know, I was trying to pull them at first but I couldn't. Then when I stuck them up in his mouth, his teeth started blowing up, like crushing them like you would crush a rock. So then his teeth started exploding in my hands, and I kept sticking them in his mouth, exploding them.

Jan. 31, 1992, Tr. at 149–151.

Petitioners maintain that their trial counsel were ineffective for failing to file a motion in limine to preclude the Government from introducing the testimony of violent acts or to object to the admission of such testimony. Implicit in Petitioners' § 2255 Motions, and argued by counsel at the March 14, 1997 hearing, are the claims that trial counsel were ineffective because, once the challenged testimony was received in evidence, counsel did not request either a limiting instruction from the Court at that time or a jury instruction for inclusion in the Court's charge advising the jury of the limited purposes for which the testimony could be considered.[4] These claims are based on the contention that Federal Rule of Evidence 404(b) barred the admission of the testimony at issue and, even if the testimony was admissible under that Rule, it should have been excluded under Federal Rule of Evidence 403. Counsels' errors, petitioners maintain, were so prejudicial that they affected the result of the trial.

The Court first concludes that all of the testimony at issue was admissible, consistent with Rule 404(b) and Rule 403, and that petitioners' counsel were not deficient in failing to file motions in limine or to object to the testimony. Second, the Court concludes that counsel were not constitutionally ineffective for failing to request a limiting instruction or an instruction for inclusion in the Court's charge to the jury: because there was overwhelming evidence against petitioners, and because the prosecutors themselves explained to the jury the limited purposes for the testimony, the Court concludes that petitioners were not prejudiced by counsel's failure to ask for an instruction to the jury. Otherwise stated, had such an instruction been given, there is not a reasonable probability that the result would have been different. Thus, with respect to counsels' failure to move for a limiting instruction (either immediately after the testimony or as part of the jury charge) the Court concludes that counsel were not constitutionally ineffective. Petitioners' claims relating to the testimony of violent acts will therefore be denied.

At the outset, the Court reiterates that, excepting only the attack on Anthony Velasquez, in which Maria Ramos participated, the testimony challenged did not directly involve petitioners, but rather involved the activities of petitioners' co-conspirators. (Petitioners did, however, participate in or condone other violent acts). The import of this distinction, that is, that a majority of the challenged testimony did not directly concern the actions of the petitioners, is that the issue is most appropriately addressed not under Rule 404(b) but within the rubric of Rule 403. As explained *infra*, Rule 404(b) is inapplicable because the violent acts which were the subject of the challenged testimony were in furtherance of and intrinsic to the overarching conspiracy for which petitioners were charged.[5] Thus, the claim that petitioners were prejudiced by the introduction of testimony regarding bad acts committed by their co-conspirators will be weighed under Rule 403. *See United States v. Brady*, 26 F.3d 282, 287–82 (2d Cir.) (after determining that evidence of crimes committed by cooperating co-conspirators was not within the scope of Rule 404(b), the Court analyzed that evidence under Rule 403, concluding that it was admissible because it was probative of the existence and nature of the conspiracy and was not unduly prejudicial), *cert. denied*, 513 U.S. 894, 115 S.Ct. 246, 130 L.Ed.2d 168 (1994).

### 1. Admissibility of Challenged Testimony—Rule 404(b)

"As a general rule, 'all relevant evidence is admissible,' Fed.R.Evid. 402, and evidence is

---

4. Petitioners expressly contended in their Motions that because the evidence was barred by Rule 404(b) or Rule 403 their trial counsel were ineffective for failing to ask the Court to instruct the jury that they could not consider the challenged testimony at all. The Court need not consider that claim in light of the Court's conclusion that the testimony at issue was not barred by either Rule 404(b) or Rule 403.

5. Moreover, the Court notes but does not rely upon the line of cases holding that, in the conspiracy context, although some courts have ruled that Rule 404(b) is not limited to other bad acts committed by "parties," evidence of other acts by co-conspirators ordinarily does not raise any Rule 404(b) questions because proof of acts of a co-conspirator normally does not taint the character of a defendant by virtue of the defendant's association with that co-conspirator. *See* 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5239, at 451 (1978).

'relevant' if its existence simply has some 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R.Evid. 401." *United States v. Murray*, 103 F.3d 310, 316 (3d Cir.1997).

■ Rule 404(b) restricts the admission of relevant evidence in particular instances. That rule provides as follows:

> evidence of other crimes, wrongs or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R.Evid. 404(b). Under Rule 404(b) testimony is barred if it is offered *only* to permit the jury to infer that because someone previously committed bad acts, that person is of unfavorable character and more likely to have committed the crime charged. *See Murray*, 103 F.3d at 316; *United States v. Sriyuth*, 98 F.3d 739, 747 (3d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1016, 136 L.Ed.2d 892 (1997); *United States v. Scarfo*, 850 F.2d 1015, 1018–19 (3d Cir.1988), *cert. denied*, 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988).

■ Petitioners object to the admission of the testimony concerning the violence under Rule 404(b), because they believe that such evidence only had the effect of tainting their character, either directly or because they associated with persons who committed such acts, and thus making it appear in the eyes of the jury that they had a propensity to commit the crimes charged. However, petitioners' argument is based on a misapprehension of the Government's case and Rule 404(b).

Rule 404(b) is not implicated in the case because the violent acts at issue are in furtherance of the crime charged, the conspiracy, and thus independently relevant.

When presented with similar facts, many courts have held that acts in furtherance of a conspiracy are properly admitted as evidence of the charged conspiracy and that Rule 404(b) *is* therefore inapplicable. In *United States v. Thai*, 29 F.3d 785 (2d Cir.1994), *cert. denied sub nom., Tran v. United States*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 364 (1994), and *Do v. United States*, 513 U.S. 993, 115 S.Ct. 496, 130 L.Ed.2d 406 (1994), for example, the court explained that testimony about a bloody beating administered to a co-conspirator because he was suspected of having retained robbery proceeds was evidence of the discipline imposed by the leaders of the enterprise on the rank-and-file members of the conspiracy and, as such, was evidence of acts in furtherance of the conspiracy and not evidence of "other" acts within the meaning of Rule 404(b). *Id.* at 812–13; *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir.1992) (testimony regarding defendant's offer to kill a rival was relevant to his concern for the conspiracy's retail operations and the lengths to which he would go to defend them and was not "other act" evidence within meaning of 404(b)), *cert. denied sub nom., Frias v. United States*, 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993); 2 Weinstein's Federal Evidence § 404.06[5], at 404–49 to 404–53.[6]

■ Also instructive are the analogous cases in which courts have held that Rule 404(b) limits the admission of evidence of other acts extrinsic to the ones charged but that acts intrinsic to the charged crime are not proscribed by Rule 404(b). *See United States v. Chin*, 83 F.3d 83, 87 (4th Cir.1996) (citing cases).[7] When the other acts "oc-

---

**6.** The case at bar is clearly distinguishable from *United States v. Murray*, 103 F.3d 310 (3d Cir. 1997), a case decided after the parties had submitted their briefs, because the Government in this case made a showing that the violent acts were orchestrated to further the conspiracy, and that petitioners had participated in other acts of violence for the same purpose. To the contrary, in *Murray*, the Third Circuit held that there was no evidence supporting a link between the charged conspiracy and testimony regarding a murder, which the court held was barred under Rule 404(b). *Id.* at 317–18.

**7.** In *United States v. Conley*, 878 F.Supp. 751 (W.D.Pa.1994), the court noted that although the Third Circuit had neither considered nor adopted the " 'intrinsic/extrinsic' evidence threshold" in the 404(b) analysis, virtually every other circuit court and district court within the Third Circuit has employed that standard. *Id.* at 755 (citing cases); *see also* Fed.R.Evid. 404(b), Advisory

curred at different times and under different circumstances from the offense charged," they are extrinsic; intrinsic acts "are those that are part of a single criminal episode." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995). Thus, an act is intrinsic to the charged act or crime if it is inextricably intertwined with the charged act or crime, in this case, the conspiracy, or is necessary to complete a coherent story of the crime charged. *See, e.g., United States v. Lambert*, 995 F.2d 1006, 1007–08 (10th Cir.) (testimony regarding undertaking of a robbery was intrinsic to the robbery charge and was not excluded by Rule 404(b)), *cert. denied*, 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Muhammad*, 928 F.2d 1461, 1468 (7th Cir.1991) (finding that 404(b) was not implicated because testimony concerning a shooting incident was presented to the jury to put the charged crime in context); *see also United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir.1992).

In *Chin* the defendant was convicted of conspiring to distribute heroin in violation of 21 U.S.C. § 846. 83 F.3d at 86. He contended on appeal that testimony by a witness that Chin engaged in contract murder and that "his people" were responsible for a particular murder was admitted in violation of Rule 404(b). *Id.* at 87. The Fourth Circuit rejected Chin's argument, holding that Rule 404(b) did not apply on the ground that the testimony was intrinsic to the conspiracy charge because "[k]illing people was an integral part of Chin's criminal enterprise, including his heroin business, and the threat of killing [was] viewed as necessary to ensure that deals were completed without problems arising." *Id.* at 88; *see also United States v. Chandler*, 996 F.2d 1073, 1101 (11th Cir.1993) (concluding that evidence of threats was admissible because such threats were uncharged offenses that arose from the same transaction as the charged offense, a marijuana trafficking operation, and were neces-

sary to complete the story of the crime); *United States v. Church*, 955 F.2d 688, 700 (11th Cir.) (holding that evidence of a conspiracy to murder defendant's partner was not subject to Rule 404(b) analysis but was "intrinsic" to another conspiracy to murder, which was a predicate act charged in the indictment, the explanation of which would have been "incomplete" without knowledge of the conspiracy to murder the partner), *cert. denied sub nom., Coppola v. United States*, 506 U.S. 881, 113 S.Ct. 233, 121 L.Ed.2d 169 (1992); *United States v. Mathis*, No. 93–454–01, 1994 WL 413142, *4–*5 (E.D.Pa. Aug.5, 1994) (holding that Rule 404(b) is not implicated when testimony regarding "eliminating witnesses" is not extrinsic to the crime charged but is inextricably intertwined with charge of conspiracy to commit armed robbery).[8]

As in *Thai, Chin* and the other cases cited herein, violence was an essential part of the RCO and integral to furthering the conspiracy. The three incidents of violence at issue characterized how the RCO maintained its control of the Spring Garden area through intimidation. David Serrano, the RCO's "enforcer," testified that Richard Ramos paid him to attack Capone because Capone owed Richard money, had slapped his sister Elizabeth, and was the leader of a different drug organization. Jan 31, 1992, Tr. at 151–52. Jesse Ramos explained that Richard Ramos made him witness the attack on Capone and then, referring to the $10,000 Richard accused Jesse of taking from him, remarked to Jesse, "You know what I can do now.... When you gonna pay me my money?" *Id.* at 208–09. Similarly, further illustrating that violence was an essential part of protecting the RCO, David Velasquez testified that his brother, Anthony, was beaten by Maria and Richard Ramos after Richard Ramos suspected that Anthony had stolen drugs from the Organization. *See* David Velasquez, Feb. 7, 1992, Tr. at 50–52 ("He had told me that

---

Committee's Note to the 1991 Amendment (explaining that Rule 404(b) does not extend to evidence of acts which are intrinsic to the charged offense); 2 Weinstein's Federal Evidence § 404.05, at 404–36 to 404–37 (2d ed.1997) (citing cases)

**8.** *See also United States v. Massie,* No. 95–5564, 1997 WL 107743, *1–*2 (4th Cir. March 12, 1997) (unpublished case) (testimony that defendant in a drug case tied up and beat witness in order prevent her from calling police was intertwined with the drug offense and properly admitted).

Richie found out that he had rob—or robbed them, so they tied him up and they beat him up in order to get the drugs back.")

And, the testimony regarding the beating of Virginia Navarro's husband also portrayed how the RCO ensured its control over its drug turf. Navarro's husband was attacked because Richard Ramos did not want him on the corner of 17th and Mt. Vernon Streets. Jose Colon, Jan. 29, 1992, Tr. at 180–81. The next day, after Richie Ramos had instructed the family to go to that corner and use violence in order maintain control, and after Virginia Navarro attempted to approach those who had assaulted her husband, she was beaten by members of the RCO, including Maria and Elizabeth Ramos, both of whom hit Virginia Navarro in the face. Virginia Navarro, Feb. 5, 1992, Tr. at 36–37; Jose Colon, Jan. 29, 1992, Tr. at 180–81. Virginia Navarro testified that as part of the same incident Elizabeth Ramos slapped Navarro's 15 year-old son twice in the face. Feb. 5, 1992, Tr. at 36. Significantly, not only did the testimony relating to the attack on Virginia Navarro's husband characterize the use of violence as a means of achieving RCO goals, but that testimony was also necessary in order to set the scene for the ensuing attack on Virginia Navarro and her son in which petitioners participated.

Moreover, it is significant that all three of the attacks which were the subject of the testimony to which petitioners object were overt acts specified in the Indictment. *See* Superseding Indictment, ¶ 11 (Velasquez beating), ¶ 20 (attack of Virginia Navarro's husband), ¶ 36 (Capone beating). Although evidence of overt acts committed in furtherance of a drug conspiracy under 21 U.S.C. § 846 need not be proven as elements of the crime, evidence tending to prove those alleged actions by co-conspirators is relevant as evidence of the conspiracy. *See United States v. Arboleda,* 929 F.2d 858, 865–66 (1st Cir.1991); *United States v. Thomas,* 875 F.2d 559, 562 n. 2 (6th Cir.), *cert. denied,* 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989); *see also United States v. Price,* 13 F.3d 711, 719 (3d Cir.1994), *cert. denied,* 514 U.S. 1023, 115 S.Ct. 1372, 131 L.Ed.2d 227 (1995).

Further, although the Court has determined that the challenged testimony is not governed by Rule 404(b), the Court's conclusion that the testimony is admissible is buttressed by the Government's position that the evidence was admissible for a purpose consistent with Rule 404(b). Evidence of other bad acts may be admissible if that testimony is not offered to prove a person's character, but is offered for another purpose as provided by Rule 404(b). *See United States v. Balter,* 91 F.3d 427, 436–37 (3d Cir.) (holding that testimony that murderer for hire had previously committed murder for payment and would do it again because he needed the money was relevant to defendant's motive and preparation and was therefore admissible under Rule 404(b)), *cert. denied,* —— U.S. ——, 117 S.Ct. 518, 136 L.Ed.2d 406 (1996); *United States v. Price,* 13 F.3d at 718–19 (concluding that there was sufficient reason, independent of character, for the admission of evidence that defendant was previously arrested for possession of a gun because the prior gun incident took place during the span of a drug conspiracy and the indictment charged that members of the conspiracy carried guns in order to protect themselves and their business, intimidate rivals, and "inflict violence upon rival drug dealers").

█ The Government maintains that the testimony concerning the violence was admissible "in anticipation of an attack on the credibility of the cooperating witness." *See* Government's Response to Maria Ramos' Petition at 10; Government's Response to Elizabeth Ramos' Petition at 8. Such a tactic is proper. In *United States v. Miller,* 895 F.2d 1431 (D.C.Cir.), *cert. denied,* 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990), the court, faced with a similar situation, ruled that where the Government could "fairly anticipate" defendant's strategy of attacking the credibility of the cooperating witness the Government was entitled to "preempt this line of argument" through relevant bad acts evidence. *Id.* at 1435 & n. 9 (internal quotation and citations omitted). Thus, the challenged testimony would not have been barred by Rule 404(b) even if the Court had not ruled that Rule 404(b) was inapplicable.

In sum, the challenged testimony emphasized the violent workings of the RCO, where brutality was an indispensable part of the business and was used to protect the organization's drugs, profits, and turf. As such, the testimony about violence was evidence inextricably intertwined with, and thus evidence of acts in furtherance of and intrinsic to, the conspiracy. The Court therefore concludes that Rule 404(b) does not apply to the testimony about the three violent incidents.[9]

### 2. Admissibility of Challenged Testimony—Rule 403

■ Although the challenged testimony is not barred by Rule 404(b), it still must satisfy Rule 403. *United States v. Hans*, 738 F.2d 88, 95 (3d Cir.1984). Under Rule 403, relevant evidence may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R.Evid. 403. "Rule 403 does not as a rule prohibit the government from presenting its strongest possible case against criminal defendants." *United States v. Eufrasio*, 935 F.2d 553, 573 (3d Cir.), *cert. denied sub nom., Idone v. United States*, 502 U.S. 925, 112 S.Ct. 340, 116 L.Ed.2d 280 (1991). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, — U.S. —, —, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997). Thus, in applying the Rule 403 test the Court "must assess the 'genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds.'" *United States v. Sriyuth*, 98 F.3d 739, 747–48 (3d Cir.1996) (quoting *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir.1988)); *see also Old Chief*, — U.S. at ———–——, 117 S.Ct. at 650–52.

■ Petitioners maintain that the jury may have been prone to prejudge petitioners based upon the detailed violent acts which were the subject of the challenged testimony, with most of which petitioners were not directly involved, or based upon petitioners' association with those who committed such acts. *See* Memorandum of Law, appended to Maria Ramos' Supplemental Petition, at 11; Memorandum of Law, appended to Elizabeth Ramos' Supplemental Petition, at 9–10. However, the Court finds that the evidence was genuinely necessary, and that any prejudicial effect of such testimony on the jury did not substantially outweigh its probative value.

As already detailed, the evidence was probative in demonstrating the workings of the RCO and the extent to which its members went to protect its drugs, profits and turf. *See Chin*, 83 F.3d at 88. Petitioners held a leadership or supervisory position in the RCO, knew about its violent activities, and participated in attacks of others. *See United States v. Adams*, 759 F.2d 1099, 1108–09 (3d Cir.) (explaining that possession of weapons, even though they could "suggest a picture of violence to the jury," "had probative value as evidence of the large scale of the [narcotics] conspiracy and the type of protection the conspirators felt they needed to protect their operation"), *cert. denied*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985); *accord United States v. Pungitore*, 910 F.2d 1084, 1152 (3d Cir.1990), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2009, 2010, 114 L.Ed.2d 98 (1991). Additionally, not only did the challenged evidence establish the magnitude and discipline of the conspiracy, but as previously discussed, it also tended to establish three overt acts specified in the indictment. As a result,

---

**9.** Petitioners maintain that admission of the challenged evidence would be barred under *United States v. Himelwright*, 42 F.3d 777 (3d Cir.1994). In *Himelwright* the Third Circuit explained that in deciding whether to admit "other acts" evidence under Rule 404(b) the evidence must be relevant to an issue actually being controverted. *Id.* at 781–82. Thus, the Court in *Himelwright* concluded that the Government's introduction of evidence of other bad acts committed by defendant in order to prove the defendant's subjective intent was not permissible because the defendant's specific intent was not an element of the crime charged and was not logically relevant. *Id.* at 782–83; *see also United States v. Brown*, 3 F.3d 673, 681 n. 8 (3d Cir.), *cert. denied*, 510 U.S. 1017, 114 S.Ct. 615, 126 L.Ed.2d 579 (1993). However, *Himelwright* is inapposite to the case at bar; the evidence at issue in this case was relevant because it was in furtherance of and intrinsic to the charged conspiracy.

such testimony was probative as evidence of the conspiracy. *See United States v. Arboleda,* 929 F.2d 858, 865–66 (1st Cir.1991); *United States v. Thomas,* 875 F.2d 559, 562 n. 2 (6th Cir.), *cert. denied,* 493 U.S. 867, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989).

Although the evidence may have been graphic, there was nothing "unfair" in presenting it to the jury. The evidence was illustrative of the rigor of the enforcement utilized by the RCO, and petitioners themselves. *See Thai,* 29 F.3d at 813 (concluding that graphic detail of 30 minute beating and the "copious flow of blood" which still stained the walls of the room several months later was probative of discipline imposed by enterprise leaders and thus outweighed the danger of prejudice); *Chandler,* 996 F.2d at 1101–02 (holding that evidence of threats and subsequent disappearances was not "unfairly" prejudicial where it was probative of defendant's attempt to protect his organization). "Moreover, it is well known that continued exposure to even emotion-arousing [evidence] tends to reduce [its] effect." *United States v. Cahalane,* 560 F.2d 601, 607 (3d Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978).[10]

Nor does the fact that Elizabeth Ramos did not directly participate in any of the attacks which were the subject of the challenged testimony or that Maria Ramos did not take part in two of the three episodes render such testimony unfairly prejudicial. First, although neither participated in the attack on Navarro's husband, description of that event was necessary in order to properly relate the context of the beating of Virginia Navarro the next day, in which both petitioners partook, and the beating of Navarro's son, also that day, in which Elizabeth participated. Also, Maria Ramos contributed to the attack of Anthony Velasquez. Further, there was other testimony at trial regarding acts of brutality in which petitioners took

part or condoned. For example, Maria Ramos attacked an elderly woman as Elizabeth Ramos simply observed nearby. Hayde Rivera, Feb. 11, 1992, Tr. at 73. Moreover, David Serrano testified that Maria Ramos exclaimed: "anybody that messes with any of my sons, I'll put a ticket on their ass." Jan. 31, 1992, Tr. at 137.[11]

Significantly, the Government never suggested that petitioners committed any of the specific acts of violence which were the subject of the challenged testimony, excepting only the attack on Anthony Velasquez in which Maria participated. *See United States v. Brady,* 26 F.3d 282, 287–88 (2d Cir.) (where government introduced evidence of murders committed by co-conspirators to show existence and nature of conspiracy but made no suggestion that defendants committed any of the murders at issue, the court found that the evidence was not unduly prejudicial), *cert. denied,* 513 U.S. 894, 115 S.Ct. 246, 130 L.Ed.2d 168 (1994). Rather, in its rebuttal argument the Government explained to the jury that petitioners had not engaged in such episodes (excepting, of course, Maria's participation in the beating of Velasquez). *See* Feb. 12, 1992, Tr. at 137–38 (stressing to the jury that it was not to "cast any aspersions" on petitioners based on "bad things done by other people" and that the jury was to "sift what concerns [petitioners] from what doesn't concern '[petitioners]')". For example, the Government specified that petitioners "had absolutely nothing to do with" the attack on Capone. *Id.*

Finally, "it is difficult to conclude that there is a prejudicial spillover where, as here, there is substantial independent evidence of [petitioners'] guilt." *United States v. Sandini,* 888 F.2d 300, 307 (3d Cir.1989), *cert. denied sub nom., Thomson v. United States,* 494 U.S. 1089, 110 S.Ct. 1831, 108 L.Ed.2d 959 (1990). In building a case of overwhelm-

---

**10.** The argument that other evidence could have been used to prove the extent to which the RCO went to further its conspiracy does not pass muster. The challenged evidence, for the same reasons that it evokes dangers of prejudice, also is probative because without the detail to which petitioners now object the Government could not have properly painted a picture of the workings of the RCO.

**11.** To the extent that there may have been more evidence introduced at trial describing violent incidents in which one participated as compared to those in which the other participated, prejudice should not be inferred just because evidence adduced is more damaging to some defendants than others. *See Eufrasio,* 935 F.2d at 568.

ing evidence of guilt, the Government presented the testimony of 20 witnesses, including 13 cooperating witnesses. This plethora of witnesses testified to the leadership and supervisory roles petitioners played in the organization. The witnesses detailed how Maria Ramos' home was the nerve center of all activities. From her home, Maria Ramos collected all sales revenue and circulated orders and instructions. Elizabeth supervised the packaging of cocaine for all locations, and occasionally picked up proceeds and delivered drugs. To rebut this evidence, only Elizabeth Ramos testified, contradicting herself on numerous occasions. After only four hours of deliberations, the jury convicted petitioners on all counts.

Thus, in light of the unusual facts of this case, the Court concludes that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.[12] Although petitioners argue that the record was poisoned because the evidence was overly prejudicial as it tempted the jury to make bad character or association inferences, any risk that the jury would have been prone to convict petitioners due to any inferences they might make from the challenged testimony was outweighed by the importance of the testimony and the overwhelming independent evidence against petitioners. *See United States v. Scarfo*, 850 F.2d 1015, 1020 (3d Cir.1988) (explaining that although "evidence of the defendant's participation in various murders would normally be excludable as irrelevant and unduly prejudicial," under the unique facts of the case the evidence was essential to the government's case); *see also United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir.1996) (finding that evidence of defendant having raped his kidnapping victim was genuinely needed to prove the kidnapping charge); *Church*, 955 F.2d at 700 (concluding that in proving that defendant conspired to murder, probative value of evidence of a separate conspiracy to murder defendant's

partner outweighed its prejudicial effect); *Eufrasio*, 935 F.2d at 573 (concluding that the relevance of evidence of uncharged Mafia crimes was so substantial as to offset its potential to cause prejudice to defendants). As such, the testimony was not barred by Rule 403, and, because the testimony also was not precluded by Rule 404(b), petitioners' counsel were not ineffective for failing to file motions in limine or for failing to object to that evidence at trial.

### 3. Counsels' Failure to Seek a Limiting Instruction

Although the Court finds that the challenged testimony was not barred by Rules 404(b) or 403, the Court must still address petitioners' claims that their counsel were ineffective for not requesting a cautionary instruction from the Court immediately after the challenged testimony or for not submitting to the Court a jury instruction advising the jury of the limited purposes for which they could consider the testimony. Federal Rule of Evidence 105 provides that "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Fed.R.Evid. 105.

The Court concludes under the second prong of *Strickland* that even if counsel did request a limiting instruction and even if the jury had been given an instruction from the Court—either immediately after the challenged testimony or as part of the jury charge—in light of the substantial evidence against petitioners and in view of the fact that the Government explained to the jury that it should not consider the evidence for improper purposes, there is not a reasonable probability that the result would have been

---

**12.** Petitioners argue that the case at bar is controlled by *United States v. Colombo*, 869 F.2d 149 (2d Cir.1989). In *Colombo*, the Court held that the admission of evidence of the rape and sodomy of a robbery victim, when defendant did not participate in the robbery nor know that a sexual assault would occur during the robbery, simply as "background" information was error because

the grave danger of unfair prejudice substantially outweighed the slight relevance of the evidence. *Id.* at 153. However, in the case at bar, the challenged evidence was not admitted as background evidence, but to illustrate the parameters of the conspiracy, *see supra*. As such, the evidence is much more probative than that in *Colombo*.

different.[13] Thus, the Court need not reach the first prong of *Strickland;* that is, it is not necessary for the Court to determine whether counsel were deficient in failing to request a limiting instruction to the jury. Counsel were not constitutionally ineffective for failing to take such action, and petitioners' claims will be denied, because there is no showing of prejudice.

Petitioners were not prejudiced by the absence of a limiting instruction from the Court because, upon weighing all the evidence presented at trial, the Court concludes that there was weighty independent evidence of guilt, *see supra* at 195. Twenty witnesses, including 13 cooperating witnesses, testified to the central roles petitioners played in the RCO, from collecting money and packaging drugs to using violence to protect that money and drugs. Petitioners were convicted on all counts after only four hours of jury deliberation.

Moreover, the absence of a limiting instruction from the Court did not prejudice petitioners because the Government did not argue that petitioners engaged in the attack on Capone or Virginia Navarro's husband, that Elizabeth Ramos participated in the beating of Anthony Velasquez, or that petitioners were likely to have committed the crimes charged simply because they associated with those co-conspirators who engaged in such acts. To the contrary, the Government explained to the jury that petitioners should not be judged based on acts which they did not commit. *Cf. United States v. Brady,* 26 F.3d 282, 287, 288 (2d Cir.) (finding that there was no indication that the government, attempted to imply that defendants had committed any of the murders which were the subject of the testimony at issue), *cert. denied,* 513 U.S. 894, 115 S.Ct. 246, 130 L.Ed.2d 168 (1994). Specifically, the Government told the jury in its rebuttal argument that the challenged testimony regarding the violent acts was not to be considered by the jurors as proof of acts committed by petitioners or in order to taint their character:

> As far as the bad things done by other people, I don't really think we admitted those to cast any aspersions on these defendants because you know from seeing how cross-examination works that if we hadn't raised them, they would have. If we didn't ask David Serrano something like—about the teeth pulling, *something that these defendants had absolutely nothing to do with,* you can be sure that the first questions on cross-examination, since they have all this discovery and they know everything about these people, would be, aren't you somebody who pulled out somebody's teeth with a pair of pliers? We know that's important to juries in considering the testimony of witnesses, and that's why we brought it up. *We know that you are able to sift what concerns them from what doesn't concern them.* You know what evidence was directed against Maria and Elizabeth Ramos, and it's that overwhelming evidence that proves this case.

February 12, 1992, Tr. at 137–38 (emphasis added)

### III. Petitioner's Claim Regarding Rule 35

At the Hearing on the Motions held on March 14, 1997, the petitioners sought review of the Government's decision not to file a motion under Federal Rule of Criminal Procedure 35(b) to reduce the sentences imposed upon them. Petitioners claim that the Government should be compelled to file such a motion.

By Order dated June 22, 1995, the Court denied Maria and Elizabeth Ramos' Motion to Compel the Government to File Rule 35 Motions to Reduce Sentence without prejudice to their right to supplement their Motions under § 2255 by adding that issue. By letter dated December 13, 1996 counsel for Maria Ramos indicated that he expected to raise at the hearing his client's "inten[tion] to

---

**13.** *Cf. United States v. Werme,* 939 F.2d 108, 114–16 (3d Cir.1991) (concluding that where evidence of a co-conspirators' guilty plea is prejudicial to the defendant on trial, the court's failure to give a limiting instruction upon request was error, but harmless error), *cert. denied,* 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); *United States v. Adams,* 759 F.2d 1099 (3d Cir.) (holding that the court did not err in not giving a limiting instruction where defendants did not request such an instruction and did not suffer prejudice from the lack of the instruction), *cert. denied,* 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

seek an order compelling the government to file a motion pursuant to Fed.R.Crim.P. 35." During scheduling conferences held on December 17, 1996 and March 12, 1997, counsel for Elizabeth Ramos explained that he also expected to raise that issue on behalf of his client at the March 14, 1997 hearing.

■ Rule 35(b) provides, in relevant part, as follows:

> The court, on motion of the Government made within one year after imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent substantial assistance in the investigation or prosecution of another person who has committed an offense.... The court may consider a government motion to reduce a sentence made one year or more after imposition of the sentence where the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence.

Fed.R.Crim.P. 35(b). The decision to file a Rule 35(b) motion is within the Government's sole discretion, except that the Government can be compelled to file a Rule 35(b) motion if it refuses to file such a motion in bad faith. *See United States v. Candela,* No. 88–919, 1992 WL 34148, *3 n. 3 (S.D.N.Y. Feb. 18, 1992); *see also Medina v. United States,* No. 89–211, 1995 WL 33098 (E.D.Pa. Jan. 25, 1995). Thus, absent such a finding of bad faith, petitioners' contention that the Government should be compelled to file a Rule 35(b) motion will be rejected.

■ At the hearing on March 14, 1997, the Government stated that although the sentences imposed upon the petitioners were harsh, it would not file a Rule 35(b) motion. The Government explained that, on the present state of the record, it chose not to file a Rule 35(b) motion because petitioners refused to cooperate pre-trial, unlike every other defendant charged in the drug conspiracy, and failed to provide substantial assistance to the Government—either within one year after imposition of their sentences, or thereafter, including at a December 1996 proffer session. Based on those facts the Government maintained that it was not acting in bad faith. March 14, 1997, Tr. at 32. Moreover,

at the hearing counsel for petitioners conceded that the Court lacked authority to compel the Government to file such a motion. *Id.* at 17–18, 22; *see also id.* at 32, 49.

The Court agrees that the Government did not act in bad faith; in fact, the Court believes that the Government gave petitioners every opportunity to cooperate. Thus, because the Government did not act in bad faith, the Court cannot compel the Government to file a Rule 35 motion. Petitioners' claim will therefore be denied.

## IV. Conclusion

In sum, the Court will deny the Petitions of Maria and Elizabeth Ramos. The Court concludes that because the challenged testimony concerning violent acts was not barred by Rules 404(b) or 403, counsel for petitioners were not ineffective for failing to file a motion in limine to preclude the Government from introducing such testimony or for failing to move to object to the admission of that testimony. And, because, in light of both the overwhelming evidence against petitioners and the Government's explanation that such testimony was not to be considered for improper purposes, the Court concludes that a limiting instruction would not have raised a reasonable probability that the result would have been different and that petitioners' counsel therefore were not ineffective for failing to request such an instruction. With respect to the second issue raised by petitioners, the Court rules that the Government cannot be compelled to file a Rule 35 motion.

### ORDER

AND NOW, to wit, this 16th day of July, 1997, upon consideration of the Motion of Petitioner, Maria Ramos, Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Document No. 142, filed May 17, 1995), the Motion of Petitioner, Elizabeth Ramos, Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Document No. 47, filed May 17, 1995), the Supplemental Petition of Maria Ramos (Document No. 149, filed Nov. 6, 1995), the Supplemental Petition of Elizabeth Ramos (Document No. 49, filed Oct. 6, 1995), the Response of the Govern-

ment in Opposition to the Motion of Petitioner Maria Ramos (Document No. 150, filed Nov. 13, 1995), and the Response of the Government in Opposition to the Motion of Petitioner Elizabeth Ramos (Document No. 50, filed Oct. 25, 1995), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that the Motion of Petitioner, Maria Ramos, Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence and the Motion of Petitioner, Elizabeth Ramos, Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence are **DENIED.**