**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

Anthony COLOMBO, Vincent Colombo, Joseph Colombo, Jr., Peter Ludovico, Philip Rossillo, Alphonse Merolla, William F.X. Klan, Antonio Lo Piccolo, Frank Sparaco, Michael Detore, Vincent Casucci, Frank Buscemi, John De Liso, Vincent La Rosa, Joseph La Rosa, Salvatore Clemente, Thomas Di Donato, Salvatore Cardella, Joseph La Bella, Joseph Rudd, Jerome Baptist, Leslie Kaye, John Lombardo, Vincent Delandro, Frank Frisone, Defendants.

Appeal of William F.X. KLAN, Defendant–Appellant.

No. 613, Docket 88–1266.

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1989.

Decided Feb. 23, 1989.

Thomas M. Buchanan, Washington, D.C. (Joseph P. Esposito, Neil J. Welch, Jr., Heron, Burchette, Ruckert & Rothwell, Washington, D.C., of counsel), for defendant-appellant.

Frank J. Marine, U.S. Dept. of Justice, Washington, D.C. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Michael Guadagno, Sp. Atty., U.S. Dept. of Justice, Brooklyn, N.Y., of counsel), for plaintiff-appellee.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

This appeal principally concerns a juror's alleged misconduct. It is claimed that one member of the jury that convicted appellant deliberately violated her oath during the *voir dire* by failing to disclose that her brother-in-law was a government attorney and that she did so in order to sit on this case. We remand for a finding of fact as to whether her brother-in-law is a government attorney. If it is found that he is, appellant's conviction must be vacated.

## BACKGROUND

Appellant William F.X. Klan was charged with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (1982), and conspiracy to distribute narcotics, 21 U.S.C. § 846 (1982). His first trial ended in a mistrial when the jury could not agree. At his second trial, he was convicted on both counts by the jury.

Appellant was alleged to have provided information to members of an organized crime family about possible criminal ventures. The government claimed that appellant, a lawyer, became connected with this organized crime family through a client, Peter Ludovico, allegedly an associate of that family. Ludovico would obtain information about probable "scores" from various tipsters, including appellant, and robberies would then be carried out, the proceeds being shared with the particular tipster. One of the gang that carried out the robberies was Anthony Ferraro, a former client of, and key immunized witness against, appellant. The robbers were alleged to have met at various locations, including the El Doro Caterers, to discuss their criminal plans.

At trial, Ferraro testified that appellant had provided tips about three of appellant's clients likely to have cash, drugs, or valuables, which then led to these individuals being robbed. One of these was a man thought to have gold and cocaine stashed in his home. Upon finding neither gold nor drugs, the crew raped and sodomized the man's wife. Appellant denied any involvement in the crimes. The jury in the second trial convicted him on both counts.

After his conviction, appellant moved for a new trial based upon an affidavit and supplemental affidavit of an alternate juror, Florence Kennedy, concerning, *inter alia*, statements to her by another juror ("the juror"). During the *voir dire*, the magistrate had made several inquiries concerning the potential jurors' contacts with both law enforcement personnel and lawyers. Included were such questions as: "Were any of you or any of your close friends or relatives ever involved in law enforcement?"; "[D]o any of you know anyone on the staff of the United States Attorney's Office of the Eastern District of New York?"; and "[D]o any of you work with lawyers or have close friends, relatives who are lawyers?" Under oath, the juror told the magistrate that she did not have a "yes" answer to any of those questions.

Ms. Kennedy averred, *inter alia*, that during a break in the trial, the juror stated to Ms. Kennedy that her brother-in-law was a lawyer for the government, but that she, the juror, did not mention this during the *voir dire* because she wanted to sit on the case. In addition, the juror said that she lived near the El Doro Caterers and "knew it was a hang out for gangsters."

## DISCUSSION

■ Appellant contends that the juror's allegedly untruthful response during the *voir dire* prejudiced his right to a fair and impartial jury. The government claims that appellant waived this claim by not asserting it in his motion for a new trial. While appellant could have been more specific in asserting this ground, the issue was clearly before the district judge. Appellant's motion thus alleged "misconduct by the jury," and incorporated by reference the Kennedy affidavit detailing the remarks of the juror. Moreover, the judge expressly stated that he had ruled on all the allegations in the Kennedy affidavit and that the only matter worthy of a hearing involved third-party communications to another juror. The issue having been before the district court and ruled upon, it has clearly been preserved for appeal.

For purposes of the appeal, we must assume the truth of the Kennedy affidavit that the juror in question deliberately failed to reveal that her brother-in-law was an attorney for the government and did so because she believed that revelation of that information might thwart her desire to sit on this case. If those are the facts, Mr. Klan's conviction cannot stand, because such conduct obstructed the *voir dire* and indicated an impermissible partiality on the juror's part.

*Voir dire* is an important method of protecting a defendant's right to trial by an impartial jury. *See McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984). We have held that the defense deserves "'a full and fair opportunity to expose bias or prejudice on the part of veniremen.'" *United States v. Barnes,* 604 F.2d 121, 139 (2d Cir.1979) (quoting *United States v. Robinson,* 475 F.2d 376, 380–81 (D.C.Cir.1973)), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). "[T]here must be sufficient information elicited on *voir dire* to permit a defendant to intelligently exercise not only

his challenges for cause, but also his peremptory challenges, the right to which has been specifically acknowledged by the Supreme Court...." *Id.* at 142.

In the instant case, if the Kennedy affidavit is correct, appellant was prevented from intelligently exercising his peremptory and causal challenges because of the juror's intentional nondisclosure. *See Barnes,* 604 F.2d at 139. Had the juror responded truthfully and disclosed that her brother-in-law was a government attorney, appellant might simply have struck her based on that information alone. Or appellant might have asked for follow-up questions by the magistrate to determine if there were grounds for a causal challenge or further reasons for using a peremptory challenge to strike her. "[D]eliberate concealment or purposefully incorrect responses during *voir dire* suffice to show a prejudicial impairment of the right to the exercise of peremptory challenges." *McCoy v. Goldston,* 652 F.2d 654, 658 (6th Cir.1981). Indeed, if the Kennedy affidavit is to be credited, the juror's motive in lying on the *voir dire* was precisely to prevent defense counsel or the magistrate from acting on information the juror believed might lead to her dismissal from the case.

■ In any event, we believe that, if such misconduct occurred, it reflected an impermissible partiality on the juror's part. Knowingly lying during the *voir dire* violated, *inter alia,* 18 U.S.C. § 1621 (1982), and subjected the juror to possible criminal contempt pursuant to 18 U.S.C. § 401 (1982), as well as to possible substantial restitution claims by the government. *Cf. United States v. Hand,* 863 F.2d 1100 (3d Cir.1988). It exhibited a personal interest in this particular case that was so powerful as to cause the juror to commit a serious crime. Such an interest not only suggests a view on the merits and/or knowledge of evidentiary facts[1] but is also quite inconsistent with an expectation that a prospective juror will give truthful answers concerning her or his ability to weigh the

---

1. The possibility that the juror injected personal knowledge into the case is raised by Kennedy's affidavit stating that the juror said she lived near the El Doro and "knew it was a hang out for gangsters." *Cf. United States v. Perkins,* 748 F.2d 1519, 1533–34 (11th Cir.1984).

evidence fairly and obey the instructions of the court. *See United States v. Bynum,* 634 F.2d 768, 771 (4th Cir.1980) ("[c]ertainly when possible non-objectivity is secreted and compounded by the deliberate untruthfulness of a potential juror's answer on *voir dire,* the result is deprivation of the defendant's rights to a fair trial.") (footnote omitted); *see also United States v. Perkins,* 748 F.2d 1519, 1531–33 (11th Cir. 1984) (refusal to disclose, *inter alia,* that juror knew defendant gives rise to presumption of actual bias); *McCoy,* 652 F.2d at 659 (district judge shall presume bias where juror deliberately concealed information).

The government argues that any misstatement is harmless because the fact that the brother-in-law was a government attorney would not be cause for dismissing the juror. That contention is of course something of overstatement since the sisters-in-law of some attorneys—for example, attorneys actually involved in this investigation and prosecution—should not be jurors in this case. Moreover, it is an irrelevant overstatement. The point is not that her relationship with her brother-in-law tainted the proceedings but that her willingness to lie about it exhibited an interest strongly suggesting partiality.

The deliberateness of the juror's alleged failure to disclose the information distinguishes this case from those relied upon by the government. *McDonough Power Equip.,* 464 U.S. at 555, 104 S.Ct. at 849, for example, involved a "mistaken, though honest, response to a question" on *voir dire.* Similarly, in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), there was no indication that the failure of the juror to disclose relevant facts was deliberate.

Finally, courts cannot administer justice in circumstances in which a juror can commit a federal crime in order to serve as a juror in a criminal case and do so with no fear of sanction so long as a conviction results. The government's brief exhibits no concern over the possible criminality of the juror's conduct and asks us to affirm without further inquiry.[2] *Compare United States v. Hand, supra.* We do not intend this observation as a rebuke because we realize that the government is confronted by cross-purposes. We also believe that whether the government chooses to prosecute such cases is not for us to decide. We need not reduce its incentives to take such conduct seriously, however, by giving the government cause to believe that overlooking juror misconduct will preserve tainted convictions.

The appropriate inquiry on remand is a narrow one. If in fact the juror's brother-in-law was a government attorney, that is sufficient corroboration of the Kennedy affidavit to call for Klan's conviction to be vacated. That fact alone demonstrates a deliberately false answer to a *voir dire* question and calls into play the principles outlined above. Inquiry into the juror's state of mind by way of partial denial, explanation or protestations of impartiality would not reveal evidence that was under these circumstances either trustworthy or sufficient to offset the deliberate violation of the oath.[3] If the district court should determine on remand that her brother-in-law was not a government attorney, this case will be referred back to this panel. *See United States v. Mastrangelo,* 693 F.2d 269, 274 (2d Cir.1982) (remand for an evidentiary hearing; further appellate proceedings to be referred to same panel), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984). In that event, we will determine whether the district court, after holding a post-trial hearing on the matter, erred in concluding that appellant was not prejudiced by certain unauthorized communications with another juror. Since a new trial may be necessary on the ground described, we need not address this issue at this time.

---

**2.** Ms. Kennedy's supplemental affidavit states that she has been interviewed by federal agents subsequent to her original affidavit. The scope of that investigation and its results are unknown to the court.

**3.** We trust the juror will, if called to testify, be advised to seek counsel.

However, because the possibility of a new trial as a result of the remand exists, we provide guidance on whether it was proper to admit evidence of the rape and sodomy of one of the robbery victims.[4] The district court allowed the prosecution to introduce evidence of the sexual assault during the prosecution's case-in-chief. The grounds advanced by the government for admitting such evidence were principally that it was necessary "background" for the predicate act of forcible robbery and involved a prior inconsistent statement by appellant. Appellant was not charged with any crime involving rape or sodomy, however, and no claim is made that appellant knew that a sexual assault would occur during the robbery. We conclude that any use of this evidence as background, given its slight relevance, was "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; *see United States v. Krulewitch*, 145 F.2d 76 (2d Cir.1944); *United States v. Frick*, 588 F.2d 531 (5th Cir.), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 385 (1979). In addition, since appellant's defense was that he was not the tipster, admission of this evidence as a response to an "anticipated defense claim" is improper.

We next address whether evidence of the sexual assault was properly admitted as a prior statement inconsistent with testimony by appellant at an earlier trial that ended in a mistrial. At that trial, appellant testified that he learned of the rape and robbery from the newspapers. Ferraro, a prosecution witness, however, claimed that appellant had told him that he had learned of the rape and robbery while going through a police roadblock near the scene the day after the incident. It was clearly error to admit such evidence before Klan's credibility had even become an issue, i.e., before he had even testified. It is axiomatic that there must be testimony in the trial at hand with which the prior statement is inconsistent before the latter may be introduced. *See* Fed.R.Evid. 801(d)(1).

Because evidence of the sexual assault is inadmissible, we expect any mention of it to be avoided in any new trial.

We remand for proceedings consistent with this opinion.

---

**4.** We do not reach the question of whether admission of this evidence may have been harmless error. If the remand does not result in the vacating of Klan's conviction, we will address this issue in subsequent proceedings.