30 P.3d 496 (2001)
STATE of Washington, Respondent,
v.
Kenny H. CHO, Appellant.
No. 46254-7-I.
Court of Appeals of Washington, Division 1.
September 4, 2001.
Reconsideration Denied November 1, 2001.
*497 Eric Broman, John Eric Gibson, Seattle, for Appellant.
Daniel Jason Clark, Seattle, for Respondent.
BECKER, A.C.J.
This case arises from a juror's failure to disclose during voir dire that he was a retired police officer. A presumption of bias arises when a juror deliberately withholds material information in order to be seated on a jury. We remand for an evidentiary hearing. Unless the trial court finds facts refuting the implication of bias, the defendant is entitled to a new trial.
On an August evening in 1999, four members of a gang were riding in a black Honda in Federal Way. The car stopped, and its occupants were confronted by members of a rival gang approaching on foot. One of the passengers in the Honda leaned out the window and shot one of the members of the rival gang. The Honda then drove off. Based on information that appellant Kenny Cho was driving the Honda, the State prosecuted him for rendering criminal assistance.
Trial began on Monday, January 10, 2000. The trial court used the Struck jury method to conduct voir dire.[1] The venire panel was seated in the courtroom with number cards. After consulting with counsel, the judge began by asking about 20 general questions. Jurors were to hold up their cards to indicate an affirmative answer to a question. Counsel for the State and for Cho were then each allowed two 20-minute segments to ask further questions.
The judge encouraged the panel to be open and frank with the court and not to withhold any information:
THE COURT: Now, if there are any questions that we ask that you feel you'd rather answer in private, please let us know and we will try to accommodate you. But please do not withhold any information. One of the worst things that you can do for us is to withhold the information until after the case is over or something else. And then you read about it in the paper, and then that makes me very unhappy. So what we want you to do is tell *498 us now how you feel about these particular items.[[2]]
On the second day, several jurors updated their responses to the questions asked the previous day, showing that they understood the court's desire to have its questions interpreted broadly.
Juror number eight, whose alleged nondisclosure is at issue in this case, held up his card in response to several of the court's questions. His responses indicated that he had been an eyewitness to crimes, had given testimony in a court proceeding, and had previous civil jury experience. Among other questions asked by the judge were some designed to elicit connections with, and attitudes toward, police officers.[3] Juror number eight responded affirmatively when the judge asked whether anyone ever had a particularly unfavorable experience with the police. In response to a general question about whether anyone worked with a court or in the administration of justice, juror number eight gave his current occupation as a security manager for Wells Fargo Bank, but did not disclose that he was a former police officer.
After voir dire concluded on Tuesday, there were no challenges for cause from either side. The State exercised peremptory challenges to strike four potential jurors from the panel. Three of them had responded affirmatively when the judge asked whether anyone had ever had an unfavorable experience with the police; the fourth had back problems. The defense exercised three peremptory challenges. Two of them were residents of Federal Way, including one, a crime victim, who reported having a favorable experience with the police and strong feelings about gangs. The third was a technician for the Federal Bureau of Investigation; his stepbrother was a police officer.
When the trial began, the State presented three witnesses beginning with the victim, who explained the rivalry between the two gangs, described the shooting incident, and identified the shooter. He identified the black Honda as Cho's, and said he had seen Cho driving it earlier in the day, but could not see who was driving because the window was rolled up. Next, one of the passengers in the Honda testified that Cho was the driver, and that after the shooting they drove off casually so as to avoid attracting suspicion. A Federal Way police officer then described his investigation, including a search of Cho's bedroom in which he found evidence of Cho's gang affiliation. In the defense case, Cho's parents and his sister gave testimony tending to prove that Cho was at home on the evening in question. The State presented two police officers in rebuttal, to impeach the testimony of Cho's family members.
The trial ended on Wednesday afternoon. On Thursday, the jury brought in a verdict of guilty. After the verdict, the jurors shared their impressions of the trial with the attorneys. Juror number eight approached Cho's attorney and inquired about the reasons defense attorneys strike jurors. During the course of this conversation it became clear to counsel that juror number eight had been a police officer for a number of years, a fact he had not disclosed during voir dire.
The next day, Cho filed a motion for a new trial based on juror misconduct. His attorney filed an affidavit relating that juror number eight said he was "surprised to have made it on the jury" because, as a former police officer, he had always been stricken from previous jury panels. "He then went on to tell me that he was the person who really argued the point with the jurors that were hesitant to convict Mr. Cho. In the end, he managed to change their minds." Counsel said the juror "was convinced no one had inquired as to whether he had been in law enforcement and reiterated his surprise at that oversight."
The trial court heard Cho's motion on January 19, 2000 and denied it in an order dated January 28, 2000:
1. The juror's nondisclosure at issue would not have independently provided a basis for a challenge for cause.... State v. Carlson, 61 Wash.App. 865, 812 P.2d 536 (1991).

*499 2. The record fails to demonstrate, by affidavit or otherwise, that the nondisclosed status or information, or the unique experiences possibly related thereto, was injected into the deliberations. This case is therefore distinguished from State v. Briggs, 55 Wash.App. 44, 776 P.2d 1347 (1989).
It is from this order denying his motion for a new trial that Cho appeals.
Cho's appeal requires us first to determine the standard that a trial court must use when faced with a motion for a new trial based on a juror's alleged failure to disclose information during voir dire, and then to decide whether the trial court erred in denying Cho's motion based on the facts presented. We will disturb a trial court's decision to deny a new trial only for a clear abuse of that discretion or when it is predicated on an erroneous interpretation of the law. State v. Briggs, 55 Wash.App. 44, 60, 776 P.2d 1347 (1989). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
The test on a new trial motion as articulated by this court is whether the movant can demonstrate that information a juror failed to disclose in voir dire was material, and also that a truthful disclosure would have provided a basis for a challenge for cause. See e.g., State v. Carlson, 61 Wash.App. 865, 877, 812 P.2d 536 (1991), review denied, 120 Wash.2d 1022, 844 P.2d 1017 (1993); State v. Briggs, 55 Wash.App. 44, 52, 776 P.2d 1347 (1989). Applying the second part of this test, the trial court concluded that even if Cho had learned during voir dire that the juror was a retired police officer, the disclosure would not have provided a basis for a challenge for cause.
According to Cho, the proper inquiry, found in older Washington cases, is whether a truthful disclosure would have independently provided a basis for a peremptory challenge. See State v. Simmons, 59 Wash.2d 381, 368 P.2d 378 (1962); Smith v. Kent, 11 Wash.App. 439, 523 P.2d 446 (1974). The holdings in Simmons and Kent reflected the established jurisprudence of their era. But 10 years after Kent, the United States Supreme Court set forth a different rule in McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (plurality opinion). McDonough is the origin of the rule applied by the trial court in the present case.
In McDonough, an action for personal injury was brought against a lawnmower manufacturer. A three-week trial resulted in judgment for the manufacturer. Plaintiffs then learned that a juror whose son had once sustained a broken leg injury in a tire explosion had failed to disclose this fact in voir dire when asked whether family members had ever sustained a severe injury. The plaintiffs moved for a new trial, arguing that if they had known this juror had such a narrow concept of severe injury, they would have exercised a peremptory challenge. The Tenth Circuit granted a new trial, holding that the juror's nondisclosure had prejudiced the plaintiffs' rights to exercise a peremptory challenge. The Supreme Court reversed. The Court stated that it would be to "insist on something closer to perfection than our judicial system can be expected to give" to invalidate the result of a three week trial because of a juror's mistaken but honest response to a question. McDonough, 464 U.S. at 555, 104 S.Ct. 845. The Court further stated:
A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination.
McDonough, 464 U.S. at 555, 104 S.Ct. 845. The court held that a juror's material nondisclosure could be the basis for a new trial only if a correct response would have provided a valid basis for a challenge for cause:
We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would *500 have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.
McDonough, 464 U.S. at 556, 104 S.Ct. 845.
Five years after McDonough, without mentioning McDonough, our Supreme Court decided a juror nondisclosure issue in Robinson v. Safeway Stores, Inc., 113 Wash.2d 154, 776 P.2d 676 (1989). The plaintiff was from California. There had been specific questions during voir dire aimed at eliciting prejudice against Californians. The person later selected to be foreman of the jury did not respond to these questions. During the jury's deliberations, he brought up his past experience as a defendant in what he considered to be a frivolous lawsuit brought by a Californian, and shared with the rest of the jurors his considerable animosity toward California plaintiffs. Upon this showing, the trial court found juror misconduct entitling the plaintiff to a new trial. The Court of Appeals reversed, but the Supreme Court reinstated the order granting a new trial:
It is jury misconduct warranting a new trial for a juror to give a false answer on a material matter during voir dire examination that conceals information properly requested by a litigant to enable him to determine whether or not to excuse the prospective juror by peremptory challenge...
Robinson, 113 Wash.2d at 160, 776 P.2d 676 (quoting Smith v. Kent, 11 Wash.App. at 443-45, 523 P.2d 446).
Cho argues that Robinson compels use of a peremptory challenge test notwithstanding the Court of Appeals line of cases utilizing the McDonough test.[4] This argument might have merit were it not for the fact that the issue of the proper standard arose again in the Supreme Court, albeit briefly, in In re Personal Restraint of Lord, 123 Wash.2d 296, 868 P.2d 835 (1994). In that case, a written voir dire questionnaire asked jurors if they recalled hearing or seeing anything about the defendant's case in the paper. A juror who worked for a newspaper responded that he did not. After the guilty verdict, he told a defense investigator that he had read a few things about the case in the paper but had not formed an opinion about the case and had no in-depth background about it. In one sentence, the Court stated that any misleading or false answers during voir dire require reversal only if accurate answers would have provided grounds for a challenge for cause. Lord, 123 Wash.2d at 313, 868 P.2d 835 (citing Briggs.) The Court held that the juror's knowledge of pretrial publicity was not sufficient for such a challenge. Lord, 123 Wash.2d at 313, 868 P.2d 835.
We conclude from the reference in Lord that our Supreme Court, like this court, now relies on the McDonough standard to ensure that juror nondisclosure does not produce an unfair trial. As the State points out, a cause-based standard avoids the temptation to an unsuccessful litigant to argue, with the clarity of hindsight, that any juror nondisclosure would have been the basis for a peremptory challenge. The trial court did not err in regarding cases based on McDonough as authoritative.
At the hearing before the trial court, Cho's counsel stated law enforcement background was the "number one reason" why he struck jurors. He argued that juror number eight's law enforcement affiliation could have led to a challenge for cause if there had been an opportunity at voir dire to question him about his ability to be fair and impartial given his experience as a police officer. The State took the position that the information withheld must itself provide a basis for a *501 challenge for cause, without speculation about what might have happened if there had been follow-up questions. The State argued that there was no basis to challenge juror number eight for cause solely on account of his status as a former police officer.
Bias, either actual or implied, is a recognized basis for a challenge for cause. See RCW 4.44.170(1) and (2). We agree with the State that there is nothing inherent in the experience or status of being a police officer that would support a finding of bias. A relationship with the government, without more, does not establish bias. See Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950) (government employees were not, solely by reason of their employment, barred from serving on a federal district court jury in the District of Columbia in a case where the allegation was willful failure to respond to a subpoena issued by the House Committee on Un American Activities); Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). See also United States v. Salamone, 800 F.2d 1216 (3rd Cir.1986) (potential jurors may not be excluded for cause based solely on perceptions of their external associations, such as membership in the National Rifle Association).
Nevertheless, it remains true under McDonough that an impartial finder of fact is one "touchstone of a fair trial". McDonough, 464 U.S. at 554, 104 S.Ct. 845. Where a juror's responses on voir dire do not demonstrate actual bias, in exceptional cases the courts will draw a conclusive presumption of implied bias from the juror's factual circumstances. See Smith v. Phillips, 455 U.S. at 222, 102 S.Ct. 940 (O'Connor, J., concurring).[5] One such circumstance is when a prospective juror deliberately withholds information during voir dire in order to increase the likelihood of being seated on the jury. McCoy v. Goldston, 652 F.2d 654, 659 (6th Cir.1981) ("We also hold that a district judge shall presume bias, and grant a new trial, when a juror deliberately concealed information or gave a purposefully incorrect answer.").[6]
An example of implied bias arising from a juror's deliberate concealment of material information is found in United States v. Colombo, 869 F.2d 149 (2d Cir.1989). In Colombo, evidence that came to light after the guilty verdict indicated that one of the jurors had a brother-in-law who was a government attorney. She allegedly told another juror that she did not mention it "because she wanted to sit on the case." Colombo, 869 F.2d at 150.[7] Such misconduct, the court observed, is "inconsistent with an expectation that a prospective juror will give truthful answers concerning her or his ability to weigh the evidence fairly and obey the instructions of the court." Colombo, 869 F.2d at 151-52.[8] In another case, the appellate court found the record strongly suggested that a juror *502 wanted to serve on the jury, and that he feared he would not be allowed to do so if he disclosed his brother's employment as a deputy sheriff in the office that performed some of the investigation in the defendant's case. U.S. v. Scott, 854 F.2d 697, 699 (5th Cir. 1988). The court held there was sufficient implication of the juror's bias to require a new trial.
The present case is one in which the possibility of implied bias should have been considered. According to the affidavit of Cho's defense counsel, juror number eight stated that he had been excluded from juries before when it came out that he was a former police officer. As in Colombo and Scott, an inference arises that juror number eight wanted to serve on the jury and realized that his chances of doing so would be greatly reduced if he disclosed that he had formerly been a police officer. If this was his thinking, he "was hostile to what he correctly perceived to be the interests of the defense and the court. This in itself constitutes bias." Scott, 854 F.2d at 699. See also Dyer v. Calderon, 151 F.3d 970, 982 (9th Cir.1998).
The State has not disputed that juror number eight was, in fact, a former police officer. The State maintains, however, that there was no material nondisclosure on the part of juror number eight because he was never specifically asked whether he was a former police officer, but only whether he was currently employed in law enforcement.
When the issue was first presented to the trial court the week after the trial, no transcript of voir dire was available. The trial judge consulted his notes to reconstruct the voir dire and recalled that the court's question was, "are you currently or have you been employed by or connected with a law enforcement agency".[9] The court accordingly assumed there had been a material nondisclosure, but then concluded that it would not give rise to a challenge for cause.
On appeal, we do have a transcript of voir dire. And it shows that the trial judge, although apparently intending to ask about past as well as current employment in law enforcement, specifically asked about past employment only in connection with military police:
Are any of you employed currently by any law enforcement agency in any capacity?
...
All right. Anybody else working with any law enforcement agency? Any retired military police here?
...
Do you have a spouse, significant other, relative, or close friend that might be a law enforcement officer or work  or that's working for any law enforcement agency?[[10]]
Thus, juror number eight's answer to the question about current employment was not untruthful. A prospective juror is not obligated to volunteer information or provide answers to unasked questions. State v. Brenner, 53 Wash.App. 367, 372, 768 P.2d 509 (juror's failure to volunteer information about his prior experience as a police officer was not misconduct where juror was not specifically asked about it), review denied, 112 Wash.2d 1020 (1989). But the transcript considered as a whole does raise a troubling inference of deliberate concealment. Not only did juror number eight fail to mention his past employment, he also did not respond when the judge asked the prospective jurors to indicate whether they, or their close friends, "have ever had a particularly favorable experience with the police?"[11] The judge then asked, first, whether anyone had had particularly unfavorable experiences with police; and second, whether their children, spouses or significant others had particularly unfavorable experiences with the police. Juror number eight held up his card both times. Later on in voir dire, defense counsel asked him to expand on his negative experiences with law enforcement. Juror number eight told about an unfavorable experience *503 in which he received a speeding ticket.
Juror number eight's answers on voir dire must be considered in light of his experience of being excused from jury service when he disclosed his past employment. It is possible, of course, that a former police officer has no close friends in law enforcement. It is possible that neither he nor anyone close to him ever had any favorable experiences with the police, and that the only experiences he had with the police worth mentioning were unfavorable. And it is possible that juror number eight sincerely believed that no one would be interested in his past employment as a police officer. But these possibilities seem unlikely, in view of his post-trial conversation with defense counsel. It is more likely that he knew disclosure was the appropriate response to the court's questions, yet deliberately construed them as narrowly and subjectively as possible so as to avoid having to reveal that he was a former police officer. See e.g., Tibbetts v. State, 698 P.2d 942, 945 (Okla.Crim.App.1985) ("the general parameters of the voir dire examination should have elicited a response" from a prospective juror whose son-in-law was a sheriff seeking employment with the district attorney's office). If so, his bias is conclusively presumed, and he committed misconduct that denied Cho his right to a fair trial by an impartial finder of fact.
In summary, it appears from the record that Cho may be entitled to a new trial on the basis of a finding of implied bias on the part of juror number eight. Because the trial court did not consider the possibility of bias implied by the juror's desire to sit on the jury, the order denying a new trial may have been predicated on an erroneous interpretation of the law.
Cho asks this court simply to order a new trial. That disposition would not be without precedent. See Scott, 854 F.2d at 701. But we think the better approach in this case is a remand for further findings after an evidentiary hearing in which the parties may, if they choose, present additional testimony to illuminate juror number eight's answers on voir dire as well as the statements he allegedly made to defense counsel after the verdict. We are unwilling to declare the trial court's order an abuse of discretion until the trial court has had the opportunity to consider the issue of implied bias, an issue not raised or briefed below.
The issue of implied bias is one that may be considered for the first time on appeal under RAP 2.5(a). It goes to the impartiality of the factfinder, a right guaranteed by the Sixth Amendment and a touchstone of the constitutional guarantee of a fair trial. But it is also an issue on which review is best done on the basis of findings made after the parties have an opportunity to develop a record with that issue in mind. See McDonough, 464 U.S. at 552, n. 3, 104 S.Ct. 845 ("Appellate tribunals are poor substitutes for trial courts for developing a record or resolving factual controversies.").
The State has complained, both in this court and below, about the defendant's failure to make a proper record of the alleged misconduct. But Cho was not required to summon juror number eight to answer questions at a post-trial hearing. Defense counsel's affidavit was sufficient by itself to establish a prima facie case of implied bias. In extraordinary situations, and we consider this to be one of them, a court may infer bias from underlying facts about the juror without regard to explanations offered by the juror. See Smith v. Phillips, 455 U.S. at 221, 102 S.Ct. 940 (O'Connor, J., concurring). If the record supports a finding that juror number eight concealed his past employment as a police officer in order to be seated on the jury, the presumption of bias would not be changed by the juror's later protestations of impartiality, however sincere. See United States v. Scott, 854 F.2d at 700 (finding of "sincerity" is not the same as a finding that the juror was unbiased; a juror may not conceal material facts disqualifying him simply because he sincerely believes that he can be fair in spite of them). Doubts regarding bias must be resolved against the juror. Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir.1991).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] As the judge explained to the venire panel, the notion behind the Struck method "is that they want to get you talking a lot more freely. And this is why this is sometimes referred to as the Oprah Winfrey or Phil Donahue method of jury selection." Report of Proceedings at 22, January 10, 2000.
[2] Report of Proceedings at 19, January 10, 2000.
[3] Report of Proceedings at 30-31, January 10, 2000.
[4] See, e.g., State v. Carlson, 61 Wash.App. 865, 812 P.2d 536 (1991) (juror's failure to reveal her knowledge of the subject of sexual abuse at voir dire did not warrant a new trial for a rape defendant because such knowledge would not have supported a challenge for cause), review denied, 120 Wash.2d 1022, 844 P.2d 1017 (1993); Hill v. GTE Directories Sales Corp., 71 Wash.App. 132, 856 P.2d 746 (1993) (juror's association with a member of defense counsel's law firm, not disclosed at voir dire, could not have been challenged for cause and did not entitle plaintiff to new trial); State v. Tigano, 63 Wash.App. 336, 818 P.2d 1369 (1991) (failure of a juror to disclose that she had heard pre-trial publicity about a case did not warrant a new trial because the juror's knowledge would not have supported a challenge for cause).
[5] The plurality in Smith holds that a post-trial hearing, in which the disfavored litigant has the opportunity to prove actual bias, is sufficient remedy when there are allegations of a juror's partiality. Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). But many federal courts have followed Justice O'Connor's concurring opinion, recognizing that in certain instances where a hearing may be inadequate for uncovering a juror's biases, implied bias may be found. "Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." Smith, 455 U.S. at 222, 102 S.Ct. 940 (O'Connor, J., concurring). Justice O'Connor's concurring opinion in Smith has majority force in that it was relied upon by the five concurring judges in McDonough. See McDonough, 464 U.S. at 557, 104 S.Ct. 845 (Blackmun, J., concurring); 464 U.S. at 558, 104 S.Ct. 845 (Brennan, J., concurring).
[6] While McCoy predates McDonough, we conclude that its discussion of presumed bias remains vital as the federal courts continue to rely on it. See, e.g., United States v. Colombo, 869 F.2d 149, 151 (2d Cir.1989).
[7] Cf. United States v. Langford, 990 F.2d 65, 67 (2d Cir.1993) (Juror who deliberately withheld information that she had been arrested and charged with prostitution was not biased; her motive was to avoid embarrassment, not a desire to sit on the jury.).
[8] On remand, after an evidentiary hearing, the district court found the juror did not intentionally withhold the information. The second circuit affirmed this ruling but reversed on other grounds, United States v. Colombo, 909 F.2d 711, 713 (2d Cir.1990).
[9] Report of Proceedings at 17, January 19, 2000.
[10] Report of Proceedings, at 28-29, January 10, 2000.
[11] Report of Proceedings, at 30, January 10, 2000.