# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56057-7-II |
| Respondent, | |
| v. | |
| LARRY JOHN LEE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Larry J. Lee appeals his 2016 conviction for second degree felony murder based on the predicate offense of second degree criminal mistreatment, arguing that the trial court erred by denying his motion for a new trial. Lee based his motion for a new trial on juror misconduct, arguing that juror 16[1] purposefully withheld material information in order to get on the jury, depriving Lee of an opportunity to exercise a challenge for cause. Lee asks for a remand for the trial court to conduct an evidentiary hearing or a new trial.

We hold that Lee fails to show juror 16's failure to disclose his criminal history caused actual prejudice to Lee's right to a fair trial. Therefore, we affirm the trial court.

---

[1] The record does not disclose that juror 16 had the opportunity to explain any lack of response to the question asked of the jury on voir dire regarding criminal history. Further, the charges against juror 16 were dismissed and the case record destroyed. Because there is no further information regarding the dismissal and juror 16 had no opportunity to address the allegations made by Lee, this opinion refers to the juror by juror number and not by name.

No. 560577-II

## FACTS

The State of Washington charged Lee with second degree felony murder, with first and second degree criminal mistreatment as the predicate offenses, and first degree manslaughter after Phillip George Carter died at Lee's home. *State v. Lee*, No. 49158-3-II, slip op. at 2-3 (Wash. Ct. App. Nov. 14, 2017) (unpublished).[2] Carter had developmental delays and required assistance with basic necessities such as meals, medications, medical appointments and hygiene. *Id*. at 1. Carter had been living in Lee's home at the time of his death. *Id*. at 2. After Lee called 911 on May 15, 2015, paramedics arrived at Lee's home and found Carter unresponsive. *Id*. Carter was found in deplorable conditions, which included "a bed soiled with pus, urine, and feces." *Id*. Medical personnel at a nearby hospital discovered large sores and wounds on Carter's body, including a deep tissue chest wound that indicated that he was strapped to his bed. *Id*. Carter also was nonambulatory when he was found. *Id*.

Police interviewed Lee, who said that he was Carter's care provider. *Id*. at 3. Lee also informed police that he had attempted to treat Carter's sores. *Id*.

At the beginning of trial, the trial court instructed the attorneys to make any challenges for cause at the time they became aware of them in order to give the opposing side an opportunity to ask further questions of the jurors. Jury voir dire commenced on June 7, 2016. During voir dire, the trial court asked the prospective jurors whether they had ever been *accused* of a criminal offense:

> Have any of you ever been accused of a criminal offense, and I don't mean like minor traffic offense, not speeding or driving without a seat belt.

---

[2] http://www.courts.wa.gov/opinions/pdf/D2%2049158-3-II%20Unpublished%20Opinion.pdf.

2 Verbatim Report of Proceedings (VRP) (June 7, 2016) at 182. Juror 16 did not respond. Two jurors, 44 and 50, gave affirmative responses. No follow up questions were asked and neither party moved to excuse any of the jurors for cause.

Following the trial court's question, the State asked if anyone was particularly excited about serving on a jury. Six jurors, including juror 16, responded affirmatively. Juror 16, along with sixteen other prospective jurors, also responded affirmatively to the State's inquiry of whether anyone had previously served on a jury. Juror 16 stated that they had served on a jury six or seven times. Juror 16 also stated that the only unsatisfying experience was when they were chosen to be an alternate juror.

During voir dire, defense counsel asked the prospective jurors:

Have any of you had any experience personally with bed sores?

2 VRP (June 7, 2016) at 211. Seven jurors responded affirmatively; juror 16 did not respond.

Defense counsel then asked:

Is there anyone that *currently* has a relative in a nursing home or adult care home?

2 VRP (June 7, 2016) at 216 (emphasis added). Juror 16 did not respond.

The State then asked the prospective jurors:

Has anybody had to provide care to anybody, either professionally or personally, under those sorts of circumstances where you have, like, an elderly relative that you are caring for in your home, whether it's, again, a relative [or] whether you have worked in that field, anybody have that sort of experience?

2 VRP (June 7, 2016) at 224. Juror 16 responded:

Well, my oldest sister has just recently been diagnosed with ALS.[3] And so she is one out of ten siblings, and we kind of help the niece and nephew going out there

---

[3] "ALS" is an acronym that stands for Amyotrophic Lateral Sclerosis (ALS).

and spending the night and making sure she she [sic] is still ambulatory. They do have health care professionals come in some of the time.

      [THE STATE]: And when you say recently?

      JUROR NO. 16: Just recently. I mean, it's just like a couple of weeks.

. . . .

      [THE STATE]: And you said recently, so this diagnosis has occurred within the last couple of weeks?

      JUROR NO. 16: The symptoms have been going on for about six months or so, but she just got diagnosed about a week ago.

      [THE STATE]: Is she still ambulatory at this point?

      JUROR NO. 16: Yeah, with a little help.

      [THE STATE]: Okay. So she hasn't reached the level yet where it's going to require kind of full-time care to assist her, that sort of thing?

      JUROR NO. 16: Right.

      [THE STATE]: But obviously, due to the nature, you are aware that that is coming?

JUROR NO. 16: Yeah.

2 VRP (June 7, 2016) at 225-26.

Defense counsel then asked the prospective jurors:

Have any of you had an unpleasant experience with a daycare facility or a home care facility or nursing home?

2 VRP (June 7, 2016) at 238. Juror 16 did not respond.

Juror 16 was subsequently seated on the jury and chosen to be the foreperson of the jury.

The jury returned its verdict, convicting Lee of one count of second degree felony murder based on the predicate crime of criminal mistreatment in the second degree. On June 30, 2016, the trial court entered its judgment and sentence, sentencing Lee to 220 months and 36 months community custody.

No. 560577-II

Lee appealed his convictions, and we affirmed in a decision filed on November 14, 2017. *Lee*, No. 49158-3-II, slip op. at 1. The mandate from this appeal was filed in April 2018. Mandate, *State v. Lee*, No. 49158-3 (Apr. 12, 2018).

Lee then filed a personal restraint petition (PRP). *In re Pers. Restraint of Lee*, No. 52170-9-II, (Wash. Ct. App. Feb. 19, 2020) (unpublished).[4] On February 19, 2020, we denied the PRP. *Id*. at 2.

On August 28, 2020, more than four years after the entry of the judgment and sentence, Lee filed a motion for a new trial based on alleged juror misconduct pursuant to CrR 7.5. Lee alleged that juror 16 deliberately concealed assault charges, which precluded Lee from exercising a challenge for cause and violated his right to trial by an impartial jury. In his motion, Lee argued that the evidence of a criminal history, discovered after the trial, "me[t] the criteria for newly discovered evidence, circumventing the time bar [of CrR 7.5]." Clerk's Papers (CP) at 6.

In support of his motion, Lee forwarded the declaration of his attorney, Barbara Corey, who had been "retained to investigate a possible issue of juror misconduct." CP at 45. Corey had run juror 16's name through the Washington court system and conducted an obituary search of Tacoma and Seattle newspapers. Corey did not state when she conducted her search. Corey estimated she spent "at least 60 hours examining records and possible relevant materials in this case." CP at 47. Through this investigation, Corey obtained evidence that showed juror 16 was

---

[4] https://www.courts.wa.gov/opinions/pdf/D2%2052170-9-II%20Unpublished%20Opinion.pdf.

previously charged with assault in 2012.[5]  The assault charge allegedly resulted from juror 16 grabbing the neck of a man at a party in Pullman and placing him in a choke hold.  Juror 16 allegedly said that the man owed them $5000 for past medical bills incurred after the man and the juror's son were in a fight.  Later, at the same event, another fight allegedly occurred where juror 16 hit additional people at the party.  Juror 16 was cited for fourth degree assault, to which juror 16 pleaded not guilty.  A year later, on September 3, 2013, the charges were dismissed.  On December 5, 2016, the case file was destroyed.

Lee presented evidence that juror 16's mother had previously been in a nursing home and died a year before trial.  He also presented evidence that juror 16's sister, who had battled ALS, passed away shortly after trial on November 16, 2016.

On September 3, 2020, the State filed a response to Lee's motion and requested that the trial court transfer Lee's motion to the Court of Appeals as a PRP.  The State argued that the motion for a new trial, filed four years after Lee's conviction and more than two years after a mandate was entered on Lee's direct appeal, was time barred by CrR 7.8 and CrR 7.5.  The State also argued that CrR 7.5(e) requires that motions for a new trial must be disposed of before entry of a judgment and sentence.  The State further argued that although CrR 7.8 permits relief from judgment on the basis of newly discovered evidence that cannot be discovered within the time limits of CrR 7.5, under CrR 7.8(b), a motion must be made within a year of judgment and meet additional time requirements under RCW 10.73.090, .100, .130, and .140.  The State asked that if the trial court

---

[5]  The trial court assumed that juror 16 was in fact the defendant in the 2012 Whitman County assault case that Lee presented and entered a conclusion of law stating this.  For purposes of analyzing Lee's arguments, this opinion assumes this as well.

addressed the merits of Lee's request, it also entered an order denying the State's request to transfer the motion to the Court of Appeals as a PRP.

On September 9, Lee replied, asking the trial court to deny the motion to transfer and to exercise its discretion under CrR 7.5(b) and extend the time for the filing of his motion under CrR 7.5. Lee argued that extending the time in which he could file his motion was "obviously essential because of the amount of time required for the investigation required to undercover [sic] the information contained in the motion for new trial." CP at 38.

On October 30, the State filed another response addressing the merits of Lee's allegation of juror misconduct. The State argued that Lee failed to show that juror 16 had not answered honestly and that the information regarding an alleged fourth degree assault was not material in the context of Lee's trial where Lee was charged with felony murder on the predicate offense of criminal mistreatment. Finally, the State argued that disclosure of the criminal history would not have supported a challenge for cause.

On March 5, 2021, the trial court heard argument on Lee's motion. The court did not address the timeliness of Lee's motion. During oral argument the parties only addressed the issue of juror misconduct. Lee argued that if the court declined to grant the motion for a new trial, it should hold a full evidentiary hearing to determine the reason that juror 16 declined to affirmatively answer the question of whether they had ever been accused of a criminal offense.

At the hearing, the trial court asked defense counsel:

> It seems to me that State v. Cho[6] would control in this case, and that the burden here would be for you to demonstrate that there's some kind of bias here, because you will agree with me, would you not, that the fact that someone has been arrested

---

[6] *State v. Cho*, 108 Wn. App. 315, 30 P.3d 496 (2001).

and charged with a misdemeanor offense is not, in and of itself, grounds for a challenge for cause, correct?

      [Defense counsel]:  I agree, and that's not the—that's not the basis . . . of the defendant's argument, Your Honor.

VRP (Mar. 5, 2021) at 6-7.  The trial court later stated:

[T]he Court doesn't have any information other than that the juror did not disclose that arrest.  That, in and of itself, I think everyone has conceded, is not grounds for a challenge for cause.

VRP (Mar. 5, 2021) at 23.

On May 7, the trial court entered written findings of fact and conclusions of law on Lee's motion for a new trial.  The trial court again failed to address the timeliness of Lee's motion.  The trial court ruled that Lee failed to show that juror 16 had actual or implied bias.  The court found:

4. There was no evidence presented to the court that Juror 16 injected the . . . assault into the deliberations of the jury in this case.
5. There was no evidence presented that Juror 16 intentionally withheld information regarding the . . . assault in an effort to be seated on the jury in this case.  In particular, the instant case is in stark contrast to <u>State v. Cho</u>, where a juror admitted that he intentionally withheld information regarding his former employment in order to be seated on a jury.

CP at 130.  The trial court concluded that the information regarding the assault charges was not material and would not have been grounds for a challenge for cause.  The trial court also concluded that juror 16 did not withhold information in order to be seated on the jury.  The trial court denied Lee's motion for an evidentiary hearing and new trial.

Lee appeals.

## ANALYSIS

A.   TIME BAR TO MOTION FOR A NEW TRIAL

The State argues that Lee's motion for a new trial brought under CrR 7.5 was untimely.[7] The State further argues that the proper basis for Lee's motion was CrR 7.8.[8]

CrR 7.5 provides that a trial court may grant a defendant a new trial for eight different causes, including "[n]ewly discovered evidence material for the defendant, which the defendant could not have discovered with reasonable diligence and produced at the trial." CrR 7.5(a)(3). The trial court may grant the new trial "when it affirmatively appears that a substantial right of the defendant was materially affected." CrR 7.5(a). "A motion for new trial *must* be served and filed within 10 days after the verdict or decision." CrR 7.5(b) (emphasis added). The trial court "*may in its discretion extend the time*" either "on application of the defendant or on its own motion." CrR 7.5(b) (emphasis added).

---

[7] The State does not argue that the trial court abused its discretion by considering Lee's CrR 7.5 motion. Rather, it appears that the State suggests that the time bar is another basis on which this court could affirm the trial court's denial of the motion for a new trial.

[8] The State contends that CrR 7.8 expressly provides an avenue for a defendant to obtain relief from judgment when he or she presents newly discovered evidence "which by due diligence *could not have been discovered in time to move for a new trial under rule 7.5*." CrR 7.8(b)(2) (emphasis added). The State asks this court "[i]n the interest of judicial economy" to "convert Lee's motion to one pursuant to CrR 7.8 and treat his petition as a PRP." Br. of Resp't at 16 n.3. It then argues that Lee's petition is time barred by RCW 10.73.090, and, even if his evidence qualified as newly discovered evidence, it does not serve to circumvent the untimeliness of his petition.

We decline to convert the notice of appeal to a PRP. Lee brought his motion pursuant to CrR 7.5, and the trial court had no CrR 7.8 motion before it nor did the trial court treat Lee's motion as a CrR 7.8 motion. Converting this appeal would not only convert a direct appeal to a PRP but also change the underlying basis on which Lee brought his motion.

Also, in a motion for a new trial based on newly discovered evidence, the moving party must show that the newly discovered evidence meets five requirements, including that

the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching.

*State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981). The absence of any one factor provides grounds for the denial of a new trial. *Id*. at 223.

Here, Lee's motion for a new trial was not brought within 10 days of the verdict. Lee's motion for a new trial pursuant to CrR 7.5 was filed in the superior court on August 28, 2020, more than four years after the jury delivered its verdict. Therefore, the motion was untimely absent an extension of time by the trial court.

Lee argues that the trial court implicitly waived the 10 day limit in CrR 7.5 as shown by the court's failure to address the issue in its findings of fact and conclusions of law. The State contends that there was no basis for an extension in this case, arguing that "[w]ith a modicum of due diligence, the information was discoverable well before four years had passed." Br. of Resp't at 15. We agree with the State.

Lee relied on a court docket and a police report that Corey discovered during an investigation of potential jurors, the results of which Corey included in a declaration filed more than four years after the trial court's judgment and sentence. Corey explained that she ran juror 16's name through the Washington Court's system and conducted an obituary search of Tacoma and Seattle newspapers. Corey estimated she spent "at least 60 hours examining records and possible relevant materials in this case." CP at 47. Aside from explaining the length of time that it took to conduct research relevant to this case, Corey provided no reason why a jury investigation

could not have been conducted at a sooner point in time. The evidence presented in Corey's declaration and relied on by Lee would have been available at the time the prospective jurors were being questioned at Lee's trial, as well as within 10 days after the jury's verdict. A defendant has access to the names of the prospective jury members and, with reasonable diligence, could conduct the investigation Corey undertook within 10 days of the verdict as specified by CrR 7.5.

The record provides no basis for an extension of the time to file a motion under CrR 7.5. However, the trial court never addressed the timeliness of the motion and the issue was never raised by either party during argument before the trial court. The trial court also never addressed whether Lee had exercised due diligence in obtaining the information he relied upon for his motion. Rather, the trial court denied Lee's motion for a new trial based on the merits.

Because Lee's motion for a new trial was untimely, we affirm the trial court's dismissal of the motion. Moreover, even if the trial court properly extended the CrR 7.5 time limit, the trial court did not err in denying Lee's motion for a new trial on the merits.

B.      JUROR 16'S FAILURE TO DISCLOSE CRIMINAL HISTORY

Lee argues that the trial court erred by not holding an evidentiary hearing and that he was deprived of a fair trial because juror 16 withheld material information that would have supported a challenge for cause. We disagree.

1.      Legal Principles

A court must hold an evidentiary hearing before ruling on a motion for a new trial based on juror misconduct when the moving party makes a prima facie showing of bias. *State v. Berhe*, 193 Wn.2d 647, 660, 444 P.3d 1172 (2019). Trial courts have discretion to determine whether to hold an evidentiary hearing before ruling on a motion for a new trial. *Id*. at 657.

11

On a motion for a new trial, juror nondisclosure will require a new trial "only on an affirmative showing of prejudice." *State v. Lupastean*, 200 Wn.2d 26, 31, 513 P.3d 781 (2022). Our Supreme Court recently stated that a party moving for a new trial must show that "the undisclosed information would have supported a valid challenge for cause or that the nondisclosure was otherwise prejudicial to the moving party's right to a fair trial." *Id*. at 31-32.

RCW 4.44.170 outlines the bases for a challenge for cause:

Particular causes of challenge are of three kinds:
(1) For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this code as implied bias.
(2) For the existence of a state of mind on the part of the juror in reference to the action or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.
(3) For the existence of a defect in the functions or organs of the body which satisfies the court that the challenged person is incapable of performing the duties of a juror in the particular action without prejudice to the substantial rights of the party challenging.

RCW 4.44.180 defines "implied bias" as:

A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:
(1) Consanguinity or affinity within the fourth degree to either party.
(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.
(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.
(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

Implied bias is not limited to the language of RCW 4.44.180. Rather, the defendant may be entitled to a new trial on the basis of implied bias under the Sixth Amendment. *Lupastean*, 200 Wn.2d at 56. However, implied bias under the Sixth Amendment "'applies only in certain exceptional circumstances.'" *Id.* at 56 (quoting *State v. Boiko*, 138 Wn. App. 256, 261, 156 P.3d 934 (2007)). Exceptional circumstances have been found to exist when a juror failed to disclose she was married to a key prosecution witness and had applied for employment with the prosecutor's office or when information is deliberately withheld by a prospective juror to increase the likelihood of being seated on the jury. *Boiko*, 138 Wn. App. at 263-64; *Cho*, 108 Wn. App. at 325.

A reviewing court will not reverse a trial court's denial of a motion for a new trial "unless there is a clear showing of abuse of discretion." *State v. Pete*, 152 Wn.2d 546, 552, 98 P.3d 803 (2004). A new trial is warranted only if "the defendant 'has been so prejudiced that nothing short of a new trial can insure that the defendant will be treated fairly.'" *Id*. at 552 (internal quotation marks omitted) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997)).

A trial court abuses its discretion "'only when no reasonable judge would have reached the same conclusion.'" *Id*. (internal quotation marks omitted) (quoting *Bourgeois*, 133 Wn.2d at 406). A reviewing court may affirm the trial court on any grounds supported by the record. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

2.      No Evidence Of Bias Resulting In Actual Prejudice

Lee relies on *Cho* and *State v. Jackson*, 75 Wn. App. 537, 879 P.2d 307 (1994), to support his claim that he is entitled to an evidentiary hearing or a new trial.

In *Cho*, after the jury issued its verdict, defense counsel submitted an affidavit stating that juror 8 informed counsel of the fact that he was a former police officer and that he had always been

excused from juries in the past because of his occupation. 108 Wn. App. at 320. Juror 8 stated that he was surprised to have been permitted to be on the jury and that no one had asked if he was a former member of law enforcement. *Id*. The *Cho* court stated that because juror 8 had been excluded from juries in the past due to his occupation, "an inference arises that juror number eight wanted to serve on the jury and realized that his chances of doing so would be greatly reduced if he disclosed that he had formerly been a police officer." *Id*. at 326. The court also examined the juror's responses to questions on voir dire and stated that it is possible that juror 8 "sincerely believed that no one would be interested in his past employment as a police officer. But these possibilities seem unlikely, in view of his posttrial conversation with defense counsel." *Id*. at 328. The court stated that it was more likely that the juror narrowed his answers during voir in order to not reveal that he had been a police officer. *Id*. The court remanded for an evidentiary hearing, rather than the requested new trial, so that the trial court would have the opportunity to consider implied bias and to hear additional evidence from the parties regarding juror 8's answers on voir dire. *Id*. at 329.

In *Jackson*, the trial judge asked the prospective jurors during voir dire if any of them would be unable to remain impartial based on what they knew of the case. 75 Wn. App at 539. No jurors responded. *Id*. After trial, a juror submitted an affidavit stating that another juror, juror X, made derogatory comments regarding African Americans, which the court held showed an aversion toward associating with African Americans and consisted of generalizations. *Id*. at 539-40, 543. Both the defendant and witnesses for the defense were African Americans. *Id*. at 544. The *Jackson* court observed that once a moving party has made a prima facie showing of bias, an evidentiary hearing should be held where the trial court could assess the "juror's responses,

credibility, and demeanor" and determine whether a juror could decide the case impartially. *Id*. Because the trial court failed to conduct an evidentiary hearing and two a half years had passed since the conviction, the *Jackson* court reversed and remanded for a new trial. *Id*. at 544-45.

Lee argues that this case is analogous to *Cho* and *Jackson*. However, the facts of this case are distinguishable. Here, unlike in *Cho*, there is no affidavit showing that juror 16 had been disqualified from serving on a jury in the past because of their dismissed 2012 charges. Therefore, no inference arises that juror 16 concealed the dismissed charges in order to sit on the jury. Also, unlike in *Jackson*, there is no evidence that juror 16 made any statements that would show an inability to try the case impartially.

Lee also suggests that juror 16 had a particular interest in this case beyond that of a citizen of the county or municipality where the incident occurred. However, the circumstances of the dismissed charges against juror 16 bore no resemblance to the charges Lee faced. Juror 16 faced assault charges resulting from a fight with a man over payment of a medical bill. The fight escalated to punching. Lee, on the other hand, faced charges related to the withholding of basic life necessities from Carter who was unable to care for himself, which resulted in Carter's death. *Lee*, No. 49158-3-II, slip op. at 1-3. There is no similarity between the cases.

Lee also asks this court to look to "additional facts surrounding [juror 16's] misconduct that established the likelihood of implied bias." Br. of Appellant at 30. Lee argues that juror 16 was "charged with a violent crime" that he failed to disclose and that he had a "predilection for vigilante justice." Reply Br. of Appellant at 28, 30. Lee contends that prejudice can be shown when the nondisclosure is considered along with evidence that juror 16's mother died while in a

nursing home the year before trial,[9] and their sister suffered from ALS and required health care assistance. Lee asserts that the possibility family members may have not received adequate care support could have resulted in juror 16 seeking to hold Lee accountable. But Lee acknowledges that there is no information regarding any complaints specific to juror 16's mother's care nor is there any evidence that juror 16's sister received inadequate care. Lee's arguments that juror 16 was actually or implicitly biased are speculative and not persuasive.

The failure to answer a question during voir dire, by itself, is insufficient to show bias. The only evidence presented is that juror 16 failed to disclose dismissed assault charges. And, contrary to Lee's assertions, there is no evidence that juror 16 was biased due to bad experiences with nursing care such that he would take it upon himself to punish Lee for some perceived negligence suffered by the juror's family, that juror 16 lied to be seated on Lee's jury, or that juror 16 was unable to be impartial. Without such evidence, Lee fails to make a prima facie showing to support a challenge for cause entitling him to an evidentiary hearing.

To be entitled to a new trial, Lee must "make an affirmative showing that the nondisclosure caused actual prejudice to [his] right to a fair trial." *Lupastean*, 200 Wn.2d at 57. As discussed above, Lee failed to do so. Therefore, the trial court did not abuse its discretion by not holding an evidentiary hearing nor in denying Lee's motion for a new trial. We affirm the trial court.

---

[9] The question posed to the prospective jurors was whether anyone "*currently* has a relative in a nursing home or adult care home?" 2 VRP (June 7, 2016) at 216 (emphasis added).

No. 560577-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Glasgow, C.J.

_____
Price, J.